IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANTONIO TAVARES, *et al.*, | : | 1:13-cv-1313 |
| | : | |
| Plaintiffs, | : | |
| v. | : | Hon. John E. Jones III |
| | : | |
| S-L DISTRIBUTION CO., INC, *et al.*, | : | |
| | : | |
| Defendants. | : | |
| | : | |

## MEMORANDUM and ORDER

### January 14, 2014

**THE BACKGROUND OF THIS ORDER IS AS FOLLOWS:**

Three (3) motions are presently before the Court: (1) Plaintiffs' Motion for Partial Summary Judgment (Doc. 46); (2) Plaintiffs' Motion to Dismiss Defendants' Amended Counterclaims (Doc. 64); and (3) Defendants' Motion for Oral Argument on Plaintiffs' Motion for Partial Summary Judgment (Doc. 67).

For the reasons set forth below, Plaintiffs' Motion for Partial Summary Judgment (Doc. 46) shall be granted, Plaintiffs' Motion to Dismiss Defendants' Amended Counterclaims (Doc. 64) shall be granted in part and denied in part, and Defendants' Motion for Oral Argument on Plaintiffs' Motion for Partial Summary Judgment (Doc. 67) shall be denied.

## I.    FACTUAL BACKGROUND

Plaintiffs Antonio Tavares, Ito Mosso, Emanuel Tavares, Julio Texeira, Antonio Oliveira, Angelo Teixera, and Melquisede Pulinario are delivery drivers. (Doc. 1, Ex. A at 13).  The Plaintiffs are all residents of Massachusetts and make deliveries to stores in Massachusetts.  (*Id*. at 13-14).  The first Defendant, S-L Distribution Co., Inc., is a Delaware corporation with its principal place of business in Hanover, Pennsylvania.  (*Id*. at 15).  The second Defendant, S-L Routes, LLC, is a Pennsylvania limited liability company and wholly-owned subsidiary of S-L Distribution Co., Inc.  (*Id*. at 15).  We shall henceforth refer to the Defendants collectively as simply "S-L".

S-L is in the business of distributing certain brands of snack foods to stores throughout the country and maintains several warehouses in Massachusetts for this purpose.  (*Id*.).  S-L hires delivery drivers, who are classified as "independent contractors," to pick up products at these warehouses and deliver the products to stores within assigned geographic territories.  (*Id*.).  Drivers are required to pay a sum of money to "buy" a route and to sign a contract called a "Distribution Agreement."  (*Id*.).  The Distribution Agreement requires drivers to purchase products from S-L at an S-L-determined price and deliver those products to authorized stores within a defined territory. (*Id*. at 15-16).  Drivers are responsible

for bearing the costs and expenses of delivering the products, including stale, destroyed, or unsold goods. (*Id*. at 16). Some stores pay their assigned driver directly, while others pay S-L, which then deducts certain costs and charges before paying the driver. (*Id*.). S-L retains the right to terminate the Distribution Agreement and "retake" the route if the driver fails to maintain satisfactory services. (*Id*.).

Near the end of 2011, S-L informed the Plaintiffs that they would be required to sell their former routes, at a price determined by S-L, and would need to buy a new route, at a price determined by S-L. (*Id*. at 18). For example, Plaintiff Emanuel Tavares alleges that he made more money on his former route, which he sold for less than $50,000.00, than he currently makes on his new route for which he paid $73,000.00. (*Id*.). Plaintiff Tavares further alleges that S-L sold the right to deliver to some of the stores on his former route for over $100,000.00. (*Id*.).

The Plaintiffs argue that they are and/or were misclassified as "independent contractors" and are, in fact, employees. Plaintiffs allege (1) violation of Massachusetts' Payment of Wages Law, (2) minimum wage violation, (3) unjust enrichment; and (4) quantum meruit. (*Id*. at 19-20). Plaintiffs seek declaratory judgment that the Distribution Agreement is unenforceable and damages for unpaid

wages and other restitution, as well as attorneys' fees and costs. (*Id*. at 20-21).

## II.    PROCEDURAL HISTORY

Plaintiffs originally filed a Class Action Complaint (Doc. 1, Ex. A at 4) in Massachusetts Superior Court on January 11, 2013.  Plaintiffs then filed a First Amended Class Action Complaint (Doc. 1, Ex. A at 13), also in Massachusetts Superior Court.  On February 19, 2012, the case was removed to the United States District Court for the District of Massachusetts.  (Doc. 1 at 1).  Following a hearing before Judge William G. Young, the case was transferred to the United States District Court for the Middle District of Pennsylvania on May 13, 2013.  (Doc. 37). Defendants filed an Answer and Counterclaims (Doc. 44) on May 28, 2013 and then filed an Amended Answer and Counterclaims (Doc. 57) on July 19, 2013.

On June 17, 2013, Plaintiffs filed a Motion for Partial Summary Judgment (Doc. 46) and brief in support thereof (Doc. 47) seeking a declaration that Massachusetts law, rather than Pennsylvania law, applies to their claims. Defendants filed a brief in opposition (Doc. 58) on July 25, 2013 and Plaintiffs filed a reply brief (Doc. 66) on August 7, 2013.  On August 9, 2013, Defendants filed a motion (Doc. 67) requesting oral argument to address the issues raised by

Plaintiffs' motion and briefs.[1]

On August 2, 2013, Plaintiffs filed a Motion to Dismiss Defendants' Amended Counterclaims (Doc. 64) and brief in support thereof (Doc. 65). Defendants filed a brief in opposition (Doc. 68) on August 16, 2013 and Plaintiffs filed a reply brief (Doc. 69) on August 30, 2013. Thus, the motions are fully briefed and ripe for disposition.

## III.    STANDARD OF REVIEW

### A.    Motion for Partial Summary Judgment

Summary judgment is appropriate if the record establishes "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant meets this burden by pointing to an absence of evidence supporting an essential element as to which the non-moving party will bear the burden of proof at trial. *Id.* at 325. Once the moving party meets its burden, the burden then shifts to the non-moving party to show that there is a genuine issue for trial. Fed. R. Civ. P. 56(e)(2). An issue is

---

[1] We shall deny Defendants' motion seeking oral argument because we believe the parties' voluminous briefs sufficiently lay out their positions with regard to the motion for summary judgment and additional argument is therefore unlikely to aid in the Court's decision.

"genuine" only if there is a sufficient evidentiary basis for a reasonable jury to find for the non-moving party, and a factual dispute is "material" only if it might affect the outcome of the action under the governing law. *Anderson v. Liberty Lobby, Inc*, 477 U.S. 242, 248-49 (1986).

In opposing summary judgment, the non-moving party "may not rely merely on allegations of denials in its own pleadings; rather, its response must ... set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). The non-moving party "cannot rely on unsupported allegations, but must go beyond pleadings and provide some evidence that would show that there exists a genuine issue for trial." *Jones v. United Parcel Serv.*, 214 F.3d 402, 407 (3d Cir. 2000). Arguments made in briefs "are not evidence and cannot by themselves create a factual dispute sufficient to defeat a summary judgment motion." *Jersey Cent. Power & Light Co. v. Twp. of Lacey*, 772 F.2d 1103, 1109-10 (3d Cir. 1985). However, the facts and all reasonable inferences drawn therefrom must be viewed in the light most favorable to the non- moving party. *P.N. v. Clementon Bd. of Educ.*, 442 F.3d 848, 852 (3d Cir. 2006).

Summary judgment should not be granted when there is a disagreement about the facts or the proper inferences that a factfinder could draw from them. *Peterson v. Lehigh Valley Dist. Council*, 676 F.2d 81, 84 (3d Cir. 1982). Still, "the

mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; there must be a *genuine* issue of *material* fact to preclude summary judgment." *Anderson*, 477 U.S. at 247-48.

## B.     Motion to Dismiss

In considering a motion to dismiss pursuant to Rule 12(b)(6), courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)).  In resolving a motion to dismiss pursuant to Rule 12(b)(6), a court generally should consider only the allegations in the complaint, as well as "documents that are attached to or submitted with the complaint, . . . and any matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case." *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).

A Rule 12(b)(6) motion tests the sufficiency of the complaint against the pleading requirements of Rule 8(a).  Rule 8(a)(2) requires that a complaint contain

a short and plain statement of the claim showing that the pleader is entitled to relief, "in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint attacked by a Rule 12(b)(6) motion to dismiss need not contain detailed factual allegations, it must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level . . . .'" *Victaulic Co. v. Tieman*, 499 F.3d 227, 235 (3d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). Accordingly, to satisfy the plausibility standard, the complaint must indicate that defendant's liability is more than "a sheer possibility." *Iqbal*, 556 U.S. at 678. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

Under the two-pronged approach articulated in *Twombly* and later formalized in *Iqbal*, a district court must first identify all factual allegations that constitute nothing more than "legal conclusions" or "naked assertions." *Twombly*, 550 U.S. at 555, 557. Such allegations are "not entitled to the assumption of truth"

and must be disregarded for purposes of resolving a 12(b)(6) motion to dismiss. *Iqbal*, 556 U.S. at 679.  Next, the district court must identify "the 'nub' of the . . . complaint – the well-pleaded, nonconclusory factual allegation[s]." *Id.*  Taking these allegations as true, the district judge must then determine whether the complaint states a plausible claim for relief.  *See id.*

However, "a complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." *Phillips*, 515 F.3d at 231 (citing *Twombly*, 550 U.S. at 588 n.8).  Rule 8 "does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Id.* at 234.

## IV.    DISCUSSION

### A.    Plaintiffs' Motion for Partial Summary Judgment

In their motion and briefing, Plaintiffs ask the Court to apply Pennsylvania choice of law principles and declare that Massachusetts law, rather than Pennsylvania law, applies to the underlying statutory claims in the Amended Complaint.  Defendants disagree, arguing that Pennsylvania's choice of law principles dictate that Pennsylvania substantive law should apply.

When this case was transferred from the District of Massachusetts due to the

forum selection clause contained in the Distribution Agreements, both parties acknowledged that Pennsylvania choice of law principles would determine which state's law applies to the underlying statutory claims. (Doc. 48, Ex. A). After an examination of the relevant factors, the Court finds that Massachusetts law shall apply to Plaintiffs' claims.

A federal court sitting in diversity applies the choice of law principles of its forum state. *See Klaxon v. Stentor Elec. Mfg.,* 313 U.S. 487, 496 (1941); *LeJeune v. Bliss-Salem, Inc.*, 85 F.3d 1069, 1071 (3d Cir. 1996). Generally, Pennsylvania courts honor the intent of contracting parties and enforce contractual choice of law provisions. *See Kruzits v. Okuma Machine Tool, Inc.*, 40 F.3d 52, 55 (3d Cir. 1994) (citing *Smith v. Commonwealth Nat. Bank*, 557 A.2d 775, 777 (Pa. Super. 1989)). Here, the Distribution Agreements governing the business relationships between Plaintiffs and Defendants specify that any disputes or claims "shall be governed by, subject to, and construed in accordance with, the laws of the Commonwealth of Pennsylvania without giving effect to its conflicts of law or choice of law provisions." (Doc. 17, Ex. A at 21). However, Pennsylvania courts have adopted section 187(2) of the Restatement (Second) Conflict of Laws, which provides for two exceptions where a contractual choice of law provision should not be enforced: (a) where "the chosen state has no substantial relationship to the

parties or the transaction and there is no other reasonable basis for the parties' choice," or (b) where "application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue." *Kruzits*, 40 F.3d at 55 (citing *Schifano v. Schifano*, 471 A.2d 839, 843 n. 5 (Pa. Super. 1984)). If either of these two exceptions are met, the contractual choice of law provision is superseded and the law that would otherwise apply is adopted.

Here, it is abundantly clear that the Defendants have a substantial relationship with Pennsylvania. It is the principal place of business of both S-L companies. This is sufficient to establish a substantial relationship. *See* Restatement (Second) Conflict of Laws §187, comment f (1971). Therefore, the section 187(2)(a) exception does not apply and the contractual choice of law provision will be enforced unless the requirements of section 187(2)(b) are met.

To qualify under the exception in section 187(2)(b) and supersede the choice of law clause in the Distribution Agreement, the Plaintiffs must show that "application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue." Accordingly, the Plaintiffs must show two things: (1) that the application of Pennsylvania law would be contrary to a

fundamental policy of Massachusetts and (2) that Massachusetts has a materially

greater interest than Pennsylvania in the determination of this case.

### 1.    Contrary to Fundamental Policy

Section 148B of the Massachusetts Wage Act, M.G.L. c. 149, § 148, *et seq.*,

("Wage Act") deals with the distinction between independent contractors and

employees.  The purpose of section 148B is to protect employees from being

misclassified as independent contractors and subsequently deprived of the benefits

enjoyed by employees.  *Somers v. Converged Access, Inc.*, 911 N.E.2d 739, 749

(Mass. 2009).  Under section 148B, an individual performing services for another

is considered an employee unless the employer proves that "(1) the individual is

free from control and direction in connection with the performance of the service,

both under his contract for the performance of service and in fact; and (2) the

service is performed outside the usual course of business of the employer; and (3)

the individual is customarily engaged in an independently established trade,

occupation, profession or business of the same nature as that involved in the

service performed."  M.G.L. c. 149, § 148B.  Section 148B serves as the

definitional section to a number of Massachusetts wage statutes, including those

involving minimum wage, overtime, payment of wages, family and medical leave,

and deductions from wages.  *See* M.G.L c. 151 §§ 1, 1A (concerning minimum

wage and overtime); M.G.L c. 149 §§ 148, 150A, 150C (concerning payment of wages, family and medical leave, and deductions from wages).

The Supreme Judicial Court of Massachusetts has held that the Wage Act is protective of fundamental public policy. *Melia v. Zenhire, Inc.*, 967 N.E.2d 580, 588 (Mass. 2012). It has also held that any agreement to circumvent the Wage Act is illegal, even when "the arrangement is voluntary and assented to." *Id.* (quoting *Camara v. Attorney Gen.*, 941 N.E.2d 1118, 1121 (Mass. 2011)). Therefore, the substantive rights conferred upon employees under the Wage Act cannot be waived. For example, an employer cannot pay a non-exempt employee in Massachusetts less than the Massachusetts' applicable minimum wage[1], even if the employee's contract contains an agreement to accept a lesser amount or stipulates that the law of another jurisdiction with a lower minimum wage[2] shall apply. A

---

[1] Under Massachusetts law, "[a] wage of less than $8.00 per hour, in any occupation, as defined in this chapter, shall conclusively be presumed to be oppressive and unreasonable, wherever the term 'minimum wage' is used in this chapter..." absent some special exception. M.G.L. c. 151 § 1. Although Massachusetts' minimum wage is specified in a separate statutory chapter and not in a section of the Wage Act, the Wage Act is violated by compensation below the minimum wage because of its requirement that employers "pay weekly or bi-weekly each such employee the wages earned by him." M.G.L. c. 149 § 148.

[2] For example, the minimum wage applicable to most non-exempt employees in Pennsylvania is $7.25 per hour. The minimum wage provided in 43 P.S. § 333.104(a)(8) is only $7.15 per hour, but 43 P.S. § 333.104(a.1) provides for the state minimum wage to be raised concurrently with the federal minimum wage if the federal minimum is increased above $7.15 per hour. Pennsylvania's minimum wage is therefore $7.25 per hour pursuant to 29 U.S.C. § 206(a)(1)(C).

contractual forum selection clause, such as the one in this case directing that the case be brought in Pennsylvania, is only enforceable if it does not deprive a plaintiff of his or her substantive rights guaranteed by the Wage Act. *Melia*, 967 N.E.2d at 165.

Whether the Plaintiffs' substantive rights under the Wage Act will ultimately be at issue in this case is dependant on whether Plaintiffs are independent contractors, unprotected by the Wage Act, or employees of S-L eligible for Wage Act protections and benefits. Because the Wage Act is protective of fundamental public policy, we reason that the method used to determine whether persons are covered by the Wage Act is similarly fundamental. The Massachusetts Legislature chose to enact a law imposing an exacting three-part test on employers because it was concerned with "the 'windfall' that employers enjoy from the misclassification of employees as independent contractors: the avoidance of holiday, vacation, and overtime pay; Social Security and Medicare contributions; unemployment insurance contributions; workers' compensation premiums, and income tax withholding obligations...." *Somers v. Converged Access, Inc.*, 911 N.E.2d 739, 750 (Mass. 2009) (citations omitted). Misclassification results in lost tax and insurance revenues for both the Federal government and the Commonwealth of Massachusetts. *Id.* In addition to harming employees, misclassification gives

employers an "unfair competitive advantage over employers who correctly classify their employees and bear the concomitant financial burden." *Id.*

Having found that Massachusetts' statutory test for differentiating between independent contractors and employees represents a fundamental policy, we now turn to whether applying Pennsylvania law would be contrary to that fundamental policy. We must therefore consider the law of both states regarding the distinction between independent contractors and employees.

As noted above, Massachusetts has enacted a statutory three-part test presuming that persons performing work for another are employees rather than independent contractor unless the employer rebuts that presumption by proving that "(1) the individual is free from control and direction in connection with the performance of the service, both under his contract for the performance of service and in fact; and (2) the service is performed outside the usual course of business of the employer; and (3) the individual is customarily engaged in an independently established trade, occupation, profession or business of the same nature as that involved in the service performed." M.G.L. c. 149, § 148B. Conversely, Pennsylvania applies a common law "right to control" test, which presumes a contractual designation of an "independent contractor" relationship to be true

unless a claimant introduces evidence proving otherwise.[3] *See Universal Am-Can, Ltd. v. Workers' Comp. Appeal Bd. (Minteer)*, 762 A.2d 328, 331 (Pa. 2000) (citing *Johnson v. Workers' Comp. Appeal Bd. (DuBois Courier Express)*, 631 A. 2d 693, 695 (Pa. Cmwlth. 1993)).  In other words, the burdens under Massachusetts and Pennsylvania law are precisely reversed. In Massachusetts, the burden is on the employer to overcome the presumption of an employee/employer relationship.  In Pennsylvania, the burden is on the claimant to prove an employee/employer relationship existed.

In a similar situation, the Ninth Circuit Court of Appeals recently applied the analytical approach of Restatement (Second) of Conflict of Laws § 187(2)[4] and found an agreement that disputes would be governed by Georgia law, under which a contractual designation of an "independent contractor" relationship is presumed to be true unless the worker introduces evidence proving otherwise, was contrary to

---

[3] Pennsylvania's test involves the following factors: (1) control of manner work is to be done; (2) responsibility for result only; (3) terms of agreement between the parties; (4) nature of the work or occupation; (5) skill required for performance; (6) whether one is engaged in a distinct occupation or business; (7) which party supplied the tools; (8) whether payment is by time or by the job; (9) whether work is part of the regular business of the employer; and (10) right to terminate employment at any time. *See Hammermill Paper Co. v. Rust Engineering Co.*, 243 A.2d 389, 392 (Pa. 1968).

[4] California's choice-of-law analytical approach is identical to Pennsylvania's in that the parties' choice is adopted unless the factors described in Section 187(2) of the Restatement dictate a different result. *See Hoffman v. Citibank (S. Dakota), N.A.*, 546 F.3d 1078, 1082 (9th Cir. 2008).

California law, which presumes an employee/employer relationship unless the employer proves otherwise. *See Ruiz v. Affinity Logistics Corp.*, 667 F.3d 1318, 1323-24 (9th Cir. 2012). Accordingly, after having also found that California had a materially greater interest in the resolution of the case, the court held the parties' choice of Georgia law to be unenforceable and directed that California law be applied to determine whether the plaintiffs were employees or independent contractors. *Id.* at 1324-25.

Although the *Ruiz* decision is not binding on this Court, we agree with its rationale. Massachusetts and Pennsylvania have each enacted laws with the general purpose of protecting workers, but the state laws at issue here, like those at issue in *Ruiz,* involve opposing presumptions and burdens of proof. The practical effect of choosing Pennsylvania law over Massachusetts law would be to substantially disadvantage any party seeking to establish the existence of an employee/employer relationship. Accordingly, we find that the application of Pennsylvania law to Plaintiffs' statutory claims would be contrary to a fundamental policy of Massachusetts. To hold otherwise would allow employers to easily circumvent fundamental Wage Act protections. An employer, particularly an employer based outside Massachusetts, would merely need to (1) require workers to sign an "independent contractor agreement" rather than an "employment agreement" and

(2) include in that agreement a forum selection clause and/or choice-of-law provision stipulating that the law of some other state shall apply to any disputes. That simple measure would allow an end run around Massachusetts' independent contractor statute and the application of a less-stringent alternative. At the same time, employers unlucky enough to be based in Massachusetts would likely be forced to abide by Section 148B's strict three-part test and grant employee status to persons performing essentially identical duties.

### 2. Materially Greater Interest

Because this case involves the non-waivable fundamental policy of Massachusetts' Wage Act and because applying another state's law carries the potential of significantly eroding the class of persons Massachusetts intended to be protected by the Wage Act, the Court finds that Massachusetts has a materially greater interest in the outcome of this case. The Plaintiffs in this case allege that they are precisely the type of persons that Massachusetts' fundamental policy is meant to protect: Massachusetts residents who perform services in Massachusetts. Defendants argue that Pennsylvania also has an interest in having its law applied to contracts formed by businesses headquartered in Pennsylvania. Of course this is true, but Pennsylvania's interest in the uniformity and predictability of such contracts is sufficiently outweighed here by Massachusetts' fundamental interest in

protecting its residents from unlawful exploitation by their employers. Finally, Massachusetts is the state which will be harmed by the loss of tax and insurance revenues if resident employees are misclassified as independent contractors. In light of all of the above considerations, we find that Massachusetts' interest in this case is materially greater than Pennsylvania's.

### 3.    Sum of the Factors

Because the Court finds that (1) that the application of Pennsylvania law would be contrary to a fundamental policy of Massachusetts and (2) that Massachusetts has a materially greater interest than Pennsylvania in the determination of this case, Restatement (Second) Conflict of Laws § 187(2)(b) applies and Massachusetts law shall be applied to Plaintiffs' statutory claims.

### B.    Plaintiffs' Motion to Dismiss Defendants' Amended Counterclaims

Defendants' Amended Answer to Plaintiffs' First Amended Complaint (Doc. 57) contains three Counterclaims against all Plaintiffs: (1) Breach of Contract, seeking indemnification for costs and fees incurred by S-L in defending this suit; (2) Declaratory Relief, seeking a declaration that Plaintiffs were and/or are independent contractors and not employees of S-L; and (3) Declaratory Judgment, seeking a declaration that the relevant Distributor Agreements are rescinded in the event that Plaintiffs succeed in proving they were and/or are employees of S-L. In

addition to the three Counterclaims against all Plaintiffs, the Defendants also assert three Counterclaims against Plaintiff Melquisede Pulinario for (1) breach of contract, (2) action on negotiable instrument, and (3) unjust enrichment. The three Counterclaims against Pulinario arise from an alleged debt owed to S-L which Pulinario has not repaid.

Plaintiffs' motion and brief in support thereof (Docs. 64, 65) ask the Court to dismiss each of S-L's asserted Counterclaims. Defendants have elected to withdraw Counterclaim I for breach of contract. (Doc. 68 at 4). However, Defendants argue that Counterclaims II and III against all Plaintiffs, as well as each of the three Counterclaims asserted against Plaintiff Pulinario individually, state a valid claim and should not be dismissed.

### 1.    Counterclaim II: Declaratory Relief

Courts should dismiss or strike redundant counterclaims when "it is clear that there is a complete identity of factual and legal issues between the complaint and the counterclaim." *Aldens, Inc. v. Israel Packel*, 524 F.2d 38, 51-52 (3d Cir. 1975). Here, in Counterclaim II, "S-L seeks a declaration that, at all time relevant hereto, Distributors were, and/or are, independent contractors and not employees of S-L." (Doc. 57 at 18). Although Plaintiffs' First Amended Complaint does not contain a separate count seeking a declaration that they are employees of S-L rather than

independent contractors, they do allege that they have been misclassified as independent contractors.[5] Clearly, a determination that Plaintiffs are employees rather than independent contractors is required for them to prevail on their statutory claims. In fact, S-L has raised as an affirmative defense that "[n]one of the Plaintiffs nor any members of the purported class are or were employees of S-L, but at all times, all Distributors were independent contractors/operators." (Doc. 57 ¶ 57). In resolving Counts I and II of the First Amended Complaint, the question of whether Plaintiffs are independent contractors or employees will necessarily be answered. Because Counterclaim II merely restates an issue already before the Court, and raises no factual or legal issues not already contained in the First Amended Complaint and Amended Answer, it will be rendered moot by the adjudication of Plaintiffs' claims. Thus, it is unnecessary and shall be dismissed.

## 2. Counterclaim III: Declaratory Judgment

Counterclaim III is styled as an alternative to Counterclaim II. In the event that the Court does *not* find in S-L's favor on the issue of whether the Plaintiffs were/are independent contractors or employees, S-L seeks a declaration that "the Distributor Agreements are rescinded and that the parties are to be returned to their respective positions occupied before the Distributor Agreements were executed."

---

[5] See Doc. 15 at 90.

(Doc. 57 at 20). In asking for declaratory judgment to this effect, S-L cites the underlying Distributor Agreements, which provide that a determination "by any board, court of competent jurisdiction or agency" that the Distributors are not independent contractors "shall entitle either party to immediately declare this Agreement null and void." (Doc. 57 at 19).

We doubt the necessity and utility of Counterclaim III because it seems that S-L could obtain the relief it seeks without any help from the Court. There appears to be no dispute that any party to a Distributor Agreement, including S-L, has the legal right to "immediately declare [it] null and void" if the Court determines that the Distributors are anything other than independent contractors. In fact, Plaintiffs seek very similar relief in asking for "declaratory judgment that the Distribution Agreement is unenforceable, in whole or in part, to the extent it constitutes an illegal contract, is void as a matter of public policy, is unconscionable, was obtained through fraud or coercion, or is otherwise unenforceable for any legal or equitable grounds." (Doc. 15 at 97). However, due to the brevity of Plaintiffs' arguments concerning Counterclaim III, we are not fully convinced at this point that we have no choice but to dismiss it. Plaintiffs' argument regarding Counterclaim III consists of only one paragraph – three sentences in length – in their brief in support of the motion (Doc. 65 at 12) and one paragraph – also three sentences in length – in their

reply brief (Doc. 69 at 4).  Neither of those paragraphs contain a citation to federal

case law.  Therefore, we shall deny the motion to dismiss Counterclaim III, but

without prejudice to Plaintiffs' right to present a more comprehensive argument on

point at a later date.

### 3.    Counterclaims Against Plaintiff Melquisede Pulinario

In addition to the Counterclaims asserted against all Plaintiffs, S-L has also

raised three Counterclaims against Plaintiff Melquisede Pulinario.  S-L alleges that it

entered into a distributor agreement with Pulinario in February of 2012, that the

agreement was terminated in December 2012, and that Pulinario is responsible for

certain expenses and costs under that agreement which he failed to pay.  (Doc. 57 at

21)  At the time Pulinario's agreement was terminated, he allegedly owed

$18,710.47.  (Doc. 57 at 21).  Further, Defendants alleges that Pulianario presented

to them five checks totaling $6,733.69, but that the checks were returned unpaid

upon presentation to the bank, leading S-L to believe that Pulinario had instructed

his bank to stop payment on the checks.  (Doc. 57 at 21-22).  As a result of

Pulinario's alleged failure to pay his debt to S-L, Defendants assert Counterclaims

against him for (1) Breach of Contract, (2) Action Upon Negotiable Instruments, and

(3) Unjust Enrichment.

Plaintiffs have moved to dismiss each of the counterclaims against Pulinario,

arguing that they are not compulsory counterclaims and should therefore be dismissed for lack of subject matter jurisdiction. Defendants respond that their counterclaims against Pulinario are compulsory because they arise out of the Distributor Agreement that forms the basis for Pulinario's claim against S-L.

Rule 13(a) of the Federal Rules of Civil Procedure provides: "A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction." For a claim to qualify as a compulsory counterclaim, the counterclaim must bear "a logical relationship to an opposing party's claim." *Xerox Corp. v. SCM Corp.*, 576 F.2d 1057, 1059 (3d Cir. 1978). A logical relationship exists where separate trials on each of the claims would "involve a substantial duplication of effort and time by the parties and the courts." *Id.* This type of duplication is likely to occur when claims and counterclaims "involve the same factual issues, the same factual and legal issues, or are offshoots of the same basic controversy between the parties." *Transamerica Occidental Life Ins Co. v. Aviation Office of America, Inc.*, 292 F.3d 384, 390 (citing *Xerox*, 576 F.3d at 1059; *Great Lakes Corp. v. Herbert Cooper Co.*, 286 F.2d 631, 634 (3d Cir. 1961)). As a general

matter, the "concept of a logical relationship has been viewed liberally" in the interest of promoting judicial economy. *Transamerica*, 292 F.3d at 389.

Here, we find that Defendants' counterclaims against Pulinario are compulsory and should not be dismissed. Each of the claims and counterclaims at issue arise out of a common relationship between Pulinario and S-L, although whether that relationship was contractor/client or employee/employer clearly remains in dispute. S-L's counterclaims are an "offshoot" of the basic controversy surrounding the validity and performance of the Distributor Agreements. Although many of the facts and legal issues between the claims and counterclaims are different, there is at least some factual overlap and S-L's counterclaims may be directly relevant to the issue of damages. If Defendants can prove that they are legitimately entitled to reimbursement and/or payment by Pulinario, that entitlement may serve as an offset to any damages owed to Pulinario as a result of his claims against S-L. To view things in the opposite direction, a finding in Plaintiffs' favor that Pulinario was an employee could potentially eliminate his obligation to pay certain business expenses and deductibles which may be imposed on an independent contractor but not an employee. Defendants' counterclaims against Pulinario are sufficiently logically intertwined with Plaintiffs claims to justify their inclusion as compulsory counterclaims. Therefore, those counterclaims shall not be dismissed.

## V.    CONCLUSION

For the foregoing reasons we shall grant Plaintiffs' Motion for Partial Summary Judgment (Doc. 46), grant in part and deny in part Plaintiffs' Motion to Dismiss Defendants' Amended Counterclaims (Doc. 64), and deny Defendants' Motion for Oral Argument on Plaintiffs' Motion for Partial Summary Judgment (Doc. 67).

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT**:

1.    Plaintiffs' Motion for Partial Summary Judgment (Doc. 46), is **GRANTED**.

2.    Plaintiffs' Motion to Dismiss Defendants' Amended Counterclaims (Doc. 64) is **GRANTED IN PART** and **DENIED IN PART** to the following extent:

   a.    The Motion is **GRANTED** to the extent it seeks dismissal of Counterclaim I for Breach of Contract (Indemnification);

   b.    The Motion is further **GRANTED** to the extent it seeks dismissal of Counterclaim II for Declaratory Relief;

   c.    The Motion is **DENIED** to the extent it seeks dismissal of Counterclaim III for Declaratory Judgment, without prejudice to Plaintiffs' ability to more comprehensively raise this issue in

another filing if they so choose;

  d. The Motion is further **DENIED** to the extent it seeks dismissal of Defendants' counterclaims against Plaintiff Melquisede Pulinario.

3. Defendants' Motion for Oral Argument on Plaintiffs' Motion for Partial Summary Judgment (Doc. 67) is **DENIED**.


      <u>s/ John E. Jones III</u>
      John E. Jones III
      United States District Judge